UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Jacob R. Karl, Jr. and Agnes E. Karl, as the Co-Trustees of and
On behalf of The Bob and Dody Karl Trust,

                          Plaintiff,

              vs.

Dimes Energy, LP; Dimes Energy GP, Inc., Duffy, Inc.,
and Virginia R. Thropp,

                        Defendants.
_____

Civ. Action No.:

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, by way of complaint against the Defendants, alleges:

**THE NATURE OF THE ACTION**

1.     This is an action seeking injunctive relief, damages, and sanctions against the Defendants for their actions and inactions in "contributing to the past or present handling, storage, treatment, transportation or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" on, at or about the real property of the Plaintiff located in the Town of Allegany, County of Cattaraugus, New York (as defined more specifically below, the "Property"); the removal, injury, destruction and taking of trees and timber from and the destruction of the lands that constitute the Property; and entry in and onto the Property and the use thereof in excess of what is reasonably necessary for the Defendants to carry on mining activities on the Property.

2.     Defendants Dimes Energy, LP; Dimes Energy GP, Inc.; and Duffy, Inc. contributed to or caused the disposal of regulated solid and/or hazardous waste on, at or about the Property in

contravention of state and federal law. Despite multiple requests and the service of the mandatory citizen suit notice letter regarding the intent to commence this action, the Defendants have refused to take necessary corrective action or fully and fairly compensate the Plaintiff for the value of removed, injured, and/or destroyed timber and the destruction of the lands of the Property and the deprivation of the Trust's and the Plaintiffs' ability to access the Property, including the trees and timber located thereon.

3.      This action is brought pursuant to the federal citizen suit provisions of the Solid Waste Disposal Act (SWDA or RCRA), 42 U.S.C. § 6901 *et seq.*; 42 U.S.C. § 1983 and 42 U.S.C. § 1988; 28 U.S.C. §§ 1331, 1343, 2201 and 2202, the Declaratory Judgment Act, 28 U.S.C. § 2201 and 28 U.S.C. § 1331, New York Real Property Actions and Proceedings Law §§ 841 and 861 and the common law.

4.      Plaintiffs seek a declaratory judgment requiring the removal of all solid or hazardous waste from the Property, damages, and the award of costs, including attorneys' fees and expert witness' fees.

**THE PARTIES**

5.      Jacob R. (Bob) Karl, Jr. and Agnes E. Karl (hereinafter, either the "Plaintiffs" or the "Trustees") reside at 3853 Carey Hollow Road, Town of Allegany, County of Cattaraugus, NY and are the co-trustees of The Bob and Dody Karl Trust (the "Trust").

6.      Excluding the subject mineral rights, The Bob and Dody Karl Trust is the owner of those parcels of land in the Town of Allegany, County of Cattaraugus, NY assigned Tax Lot Parcel ## 93.004-2-6.2 and 93.004-2.6.5 (the "Property").

7.      Defendant Dimes Energy GP, Inc. is a Delaware limited liability company and maintains a place of business at 757 East State Street, Olean, New York.

8.      Defendant Dimes Energy GP, Inc. is the general partner of Dimes Energy, LP.

2

9.      Dimes Energy, LP. is, upon information and belief, a Delaware limited partnership and maintains a place of business at 757 East State, Street, Olean, New York.

10.     Defendant Duffy, Inc. is a Pennsylvania corporation and maintains a place of business at 1 Delta Drive, Smethport, PA ("Duffy").

11.     Defendant Virginia R. Thropp resides at 14 Main Street, Town of Allegany, Cattaraugus County, NY, and is the owner of the Property's mineral rights.

## JURISDICTION AND VENUE

12.     This action arises under section 7002(e) of RCRA, 42 U.S.C.A. § 6972(e), New York Real Property Actions and Proceedings Law § 861 and the common law.

13.      This Court has jurisdiction over the subject matter of this action pursuant to section 7002 of RCRA, 42 U.S.C. § 6972; 28 U.S.C. § 1331 (federal question).

14.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims under the Real Property Actions and Proceedings Law and common law because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

15.     This Court has authority to enter a declaratory judgment regarding the rights and liabilities of the parties pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; section 7002 RCRA, 42 U.S.C. § 6972; N.Y. C.P.L.R. § 3001, the State Real Property Actions and Proceedings Law, and the common law.

16.     Venue is proper in this Court pursuant to section 7002 of RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. §§ 1391(b)(1) & (2), because the events giving rise to the Plaintiffs' claims, including the Defendants' handling, storage, treatment, transportation and/or disposal of solid and/or hazardous waste, the  removal, injury, destruction and taking of timber trees and timber, and the destruction of the lands of the Property occurred entirely within this District.

3

17.     Plaintiffs complied with the notice requirements set forth at 42 U.S.C.A. § 6972(b)(l) and 40 C.F.R. Part 254 by transmitting a copy of the letter attached hereto as "Exhibit A" to each of the addressees identified therein on about June 16, 2021.

18.     More than 90 days have passed since Plaintiffs' Citizen Suit notice letter on June 16, 2021. A copy of the letter and evidence of its delivery is attached hereto as "Exhibit A." The letter was delivered to each of the addressees listed therein. Neither the United States Environmental Protection Agency nor the New York State Department of Environmental Conservation (NYSDEC) has commenced, and neither is diligently prosecuting, any action to redress the subject violations.

**FACTUAL BACKGROUND**

19.     Plaintiffs are the co-trustees of the Trust, which is the owner of the "Property."

20.     As the co-trustees of the Trust, Plaintiffs are authorized to commence this action on behalf of the Trust.

21.     Defendants Dimes Energy GP, Inc. and Dimes Energy, LP (collectively, the "Dimes Defendants") are engaged in the business of the exploration and extraction of oil and gas, including in and about the Bradford Oil Field located in the Town of Allegany, Cattaraugus County, NY, and northwestern Pennsylvania.

22.     Defendant Dimes Energy, GP, Inc. is a serial violator of the statutes, regulations, and permits that regulate the exploration and extraction of oil and gas in the state of New York, having admitted in a Consent Order (Case R9-20200-729-139) entered into with the NYSDEC, Division of Mineral Resources, to 160 separate violations including "leaking oil wells, and associated pollution to the environment; inadequately identifying its wells, failing to remove pit fluids and cuttings from its

4

well sites, failing to file temporary abandonment request forms, erosion and sedimentation violations, as well as having excessive vegetation and debris at its well sites."

23.     On or about, July 18, 2019, Defendant Thropp executed a lease agreement that granted Defendant Dimes Energy, LP. the right to explore, conduct operations for, and produce oil and gas on, at and about the Property (the "Thropp Lease").

24.     The Thropp Lease, which was drafted by Defendant Dimes Energy, LP., purports to grant the Defendant:

> the right to remove timber at its discretion for the purpose of exploring, developing, transporting, and marketing the hydrocarbons contained on and under the Leased premises[,]

and obligated the Defendant to:

> pay Lessor the fair market value for said timber, less timber removal costs incurred by Lessee.

25.     The Thropp Lease was executed on behalf of Defendant Dimes Energy, LP by Michel Piette, as the president of Defendant Dimes Energy GP, Inc., the general partner of Dimes Energy, LP.

26.     Defendant Duffy, Inc. is engaged in the excavation, site work, demolition, and land clearing business.

27.     On, about or after July 18, 2019, Dimes Energy GP, Inc. retained Defendant Duffy, Inc. to conduct land clearing, tree removal, excavation and site preparation work on, at or about the Property.

28.     On, about or after July 18, 2019, Defendant Dimes Energy GP, Inc. applied for and was issued a permit from the NYSDEC authorizing the Defendant to drill, deepen, plug back or convert a well subject to the oil, gas and solution mining law on, at or about the Property.

29.     The NYSDEC oil & gas permit issued to Defendant Dimes Energy GP, Inc. required that, prior to the commencement of any operation, the permittee give notice by certified mail to any surface landowner affected by the permitted operation.

30.     Defendants Dimes Energy GP, Inc. and Michel Piette never provided the Plaintiffs or the Trust the mandatory pre-entry notice required by the subject NYSDEC oil & gas permit.

31.     On or about October 14, 2019, Plaintiff Bob Karl found Jim Duffy of Duffy, Inc. and others on the Property.

32.     Plaintiff Karl found that Duffy had felled a large number of trees on the Property and a bulldozer and an excavator were clearing land in preparation for the construction of a road or roads on the Property.

33.     Defendant Duffy had entered the Property from adjoining land to the south on the other side of the hill from the Trustees' residence.

34.     When Duffy was informed that neither the Trustees nor the Trust had been notified in advance of the work Duffy was conducting, Duffy stopped work and informed Plaintiff Bob Karl that Duffy would notify Dimes and await further instruction from Dimes.

35.     On November 2, 2019, Plaintiff Bob Karl discovered a bulldozer operating on the Property.

36.     The subject bulldozer operator stated he was clearing a path for an oil line.

37.     Plaintiff Bob Karl informed the bulldozer operator he was trespassing, and the operator thereafter drove the bulldozer up the hill and off the Property.

38.     Later that same day, Plaintiff Bob Karl discovered a small excavator had come on to the Property.

39.     The excavator operator told Plaintiff Bob Karl that he was told "the problem had been resolved" and that he could proceed with his excavation work.

40.     Plaintiff Bob Karl informed the excavator operator that he had not spoken with anyone, and the "problem" had not been resolved. The excavator operator thereafter exited the Property.

41.     On November 2, 2019, a caller who identified himself as "Paul, a representative of Dimes" provided the following call back telephone number 440-463-2702 to Plaintiff Bob Karl.

42.     On November 5, 2019 Plaintiff received a telephone call from an individual who identified himself as "Paul," a representative of Dimes. Paul told Plaintiff Bob Karl that he was a representative of Dimes, falsely claimed the Trust did not own the timber located on, at or about the Property, but that "in the spirit of being a good neighbor," offered Plaintiff Bob Karl less than fair market value for the timber that had already been felled prior to notice being provided to the Trust, but that Dimes would "charge" the Trust $3,500 to remove the felled trees from the Property.

43.     The NYSDEC website reports the telephone number for Dimes Energy GP, Inc. as 440-463-2702, the same number that was used by "Paul" to telephone the Plaintiffs.

44.     Upon information and belief, the "Paul" identified in Paragraphs 41 and 42 above is Paul Ramirez, who, upon further information and belief, was subsequently appointed the chief executive officer of Defendant Dimes Energy GP, Inc.

45.     On November 9, 2019, Plaintiff Bob Karl discovered Defendant Duffy on the Property.

46.     The Duffy representative told Plaintiff Bob Karl that he was told by Dimes that he could proceed with work on the Property.

47.     Plaintiff Bob Karl instructed Defendant Duffy to vacate the property and Defendant Duffy complied.

48.     On November 12, 2019, the Trust and the Trustees received correspondence from Attorney Eric M. Firkel dated November 9, 2019 (the "Firkel Letter"). Attorney Firkel identified himself in the letter as "corporate counsel to Dimes Energy."

49.     The Firkel Letter read, in part, as follows: "You will be paid fair market value for any tree removed from your property, in accordance with New York State law."

50.     The Firkel Letter then falsely alleged that the Trustees had "impeded our (*sic*) ability to develop this lease" and threatened to bring legal action against the Trust and/or Trustees contending that "your actions have cost us (*sic*) nearly $10,000.00 to date."

51.     Following the Firkel Letter, the Dimes and Duffy Defendants and/or other Dimes-retained contractors returned to and entered the Property, continued to fell, damage and/or bury trees located on the Property, and installed roads, pipelines, and oil and gas wells on the Property.

52.     Prior oil and gas exploration roadways constructed on the Property were 25 feet wide, included no embankments, and did not result in the disposal of any solid waste or the construction of any solid waste laden embankments.

53.     The Dimes and Duffy Defendants elected not to use existing trails or prior exploration roadways located on the Property.

54.     The Dimes and Duffy Defendants scraped and excavated out of the previously wooded hillsides multiple roads up to 85-feet in width.

55.     The roads constructed by the Dimes and Duffy Defendants are up to two times the width of a standard state road that had to have been utilized to deliver the necessary construction equipment to the Property.

56.     The roads constructed by the Dimes and Duffy Defendants are bounded by embankments comprised of and constructed with the Dimes Defendants' oil and gas exploration wastes.

57.     The roads constructed by the Dimes and Duffy Defendants were multiple times wider than what was and is necessary for the reasonable use and enjoyment of Dimes Defendants' rights under the Thropp Lease.

58.     The roads constructed by the Dimes and Duffy Defendants are in excess of what is reasonably necessary for the Dimes Defendants to carry on mining activities on the Site.

8

59.     The embankments constructed by the Dimes and Duffy Defendants are in excess of what is reasonably necessary for the Dimes Defendants to carry on mining activities on the Site.

60.     The Dimes and Duffy Defendants' construction practices included the felling of trees and, before they could be removed and sold, their burial in and by rock, soil, mud, solid waste and the debris filled embankments.

61.     The  embankments constructed by the Dimes and Duffy Defendants serve to enclose both the constructed roads and wells and create a barrier wall across the entire west-to-east width of the Trust's property and prevents access by the Trust, its members, and invitees to the remainder of the Property, including both cut and unfelled timber.

62.     The Dimes and Duffy Defendants regularly left unburied trees at locations inaccessible to the Trust and/or regularly buried standing trees in the constructed embankments and/or damaged, gouged or scarred the trees so as to destroy their market value.

63.     The following photographs provide examples of the Dimes and Duffy Defendants' practices described in Paragraphs 60 and 62 above.

    a.  Overburden and silt buried trees:



    b.  Gouged trees:



64.     The Dimes Defendants' construction practices included the failure to remove pit fluids and cuttings, the spilling of petroleum, failing to capture and prevent the escape of sludge pits wastes, all of which were, upon information and belief, buried in or under the debris-filled embankments along with waste drilling pipe, cable, drilling waste and debris, and waste containers (the "Regulated Fill").

65.     The Dimes Defendants' construction practices included the disposal on the Property of rubber piping, pull rods, orange hoses, steel cable, and the starter mechanism for a Briggs & Stratton engine all of which are partially buried in the Dimes Defendants' constructed embankments.

66.     The following photographs provide examples of the Dimes and Duffy Defendants' practices described in Paragraph 63 and 64 above.

      a.   Overburden and silt buried trees:



10

b.  Partially buried pipe:



c.  Partially buried waste container:



d.  Buried drilling waste and debris:



e.   Runoff from blown out drill pit



67.     The Dimes Defendants' construction practices included evidence of unsanitary human waste disposal.

68.     The Dimes Defendants' construction and waste disposal practices on, at and about the Property are in excess of what is reasonably necessary for the Dimes Defendants to carry on mining activities on the Site.

69.     Only a court approved, directed and supervised plan of removal will disclose what other wastes are buried on the Property and ensure the proper removal and off-site disposal of all the Dimes Defendants' Regulated Fill.

70.     The Thropp Lease required the Defendant to bury its pipelines "below ordinary plow depth on cultivated fields" only if requested in writing by Defendant Thropp.

71.     The Property contains no cultivated fields.

72.     The Dimes Defendants constructed their pipelines under and adjacent to each of the roadways that they and/or their contractors constructed on the Property.

73.     The Dimes Defendants failed to note the location and/or depth of the subject pipelines.

74.     The Dimes Defendants' pipeline construction and marking practices on, at and about the Property constitute a use of the Property in excess of what is reasonably necessary for the Dimes Defendants to carry on mining activities on the Site.

75.     As a result of the practices of the Dimes Defendants and their contractors, environmental conditions on and at the Property continue to deteriorate.

76.     The culvert dam installed by the Dimes Defendants near Well DT-44 to prevent water from running onto Trust property no longer retains water, which now escapes and runs across Trust property.

77.     Runoff from two locations associated with the Dimes Defendants' Well DT-50 flows across Trust property. At both locations the runoff has washed away the ground cover and is eroding the surface of the Property's lands. The flow from the west side of the well continues downhill and ultimately, onto the lands of adjoining property owners in the direction of a pond.

78.     The washing away of ground cover and the erosion of surface soils is also occurring on the Property as the result of surface flows off the west side Defendant Dimes' Well DT-52 and Well DT-53.

79.     Water has broken through the Dimes Defendants' Well DT-54 retaining basin located on the lands of Albert F. Putt and runs across the lands of the Trust, depositing sediment and otherwise damaging the Trust property.

80.     The continuing destruction of environmental conditions on, at and about the Property by the Dimes Defendants construction and maintenance practices on, at and about the Property are in excess of what is reasonably necessary for the Dimes Defendants to carry on mining activities on the Site.

## THE LEGAL AND REGULATORY STATUS OF THE EMBANKMENT AND WASTE DEPOSITED IN, UNDER AND OTHERWISE COMPRISING THE DEFENDANT-CONSTRUCTED EMBANKMENTS

81.     The Regulated Fill and the constituents that comprise the Regulated Fill (see ¶¶ 63-66 above) are regulated as solid waste and/or hazardous waste under federal and state law.

### Applicable Federal Law

82.     As is applicable to a RCRA Citizen Suit such as this action, section 1004 of the RCRA, 42 U.S.C. § 6903(27), defines "solid waste" as:

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility *and other discarded material*, … resulting from industrial, commercial, mining, and agricultural operations, and from community activities . . .

83.     The phrase "discarded materials" is used to identify collectively those substances often referred to as industrial, municipal or post-consumer waste; refuse, trash, garbage and sludge or material which no longer serve its intended purpose, and which is no longer wanted.

84.     The RCRA defines "disposal," at 42 U.S.C. § 6903(3), as the "discharge, deposit, … or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be discharged into any waters."

85.     Pursuant to RCRA, the Dimes and Duffy Defendants' placing of the Regulated Fill on the Property constituted the disposal of solid or hazardous waste under federal law.

86.     The expansive language of RCRA confers upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by the Regulated Fill.

### Applicable State Law

87.     Pursuant to New York Environmental Conservation Law § 27-0701(1):

> "Solid waste" means all … materials or substances discarded or rejected as being spent, useless, worthless or in excess to the owners at the time of

such discard or rejection, except (sic) including but not limited to … commercial waste, … demolition and construction debris.

88.     Pursuant to 6 NYCRR 360-1.2:

(1) *Solid waste* means, except as described in paragraph (4) of this subdivision, any garbage, refuse, sludge from a wastewater treatment plant, water supply treatment plant, or air pollution control facility and other discarded materials including solid, liquid, semi-solid, or contained gaseous material, resulting from industrial, commercial, mining and agricultural operations … and from community activities ...

(2) A material is discarded if it is abandoned by being:

(i) disposed of; [and]

(3) A material is disposed of if it is discharged, deposited, injected, dumped, spilled, leaked or placed into or on any land or water so that such material or any constituent thereof may enter the environment or be emitted into the air or discharged into groundwater or surface water.

89.     Pursuant to 6 NYCRR 360-1.1(b), New York regulations require that all solid waste "… must be transferred, processed, recovered, stored, reclaimed or disposed of in a manner consistent with" Part 360, which specifically prohibits the disposal of solid waste except as provided for and authorized by regulation.

90.     The regulations further provide, at 6 NYCRR 360-1.5, entitled "Prohibited disposal," as follows:

(a) Solid waste disposal facilities. Except as provided for in Subparts 360-10 and 360-17 of this Part, no person shall dispose of solid waste in this State except at:

(1) a disposal facility exempt from the requirements of this Part; or

(2) a disposal facility authorized to accept such waste for disposal pursuant to this Part or to a department-issued or court-issued order.

91.     Pursuant to 6 NYCRR 360-1.1(b)(38), construction and demolition (C&D) debris is a regulated solid waste.  It is defined, in relevant part, as:

15

Uncontaminated solid waste resulting from the construction, remodeling, repair and demolition of utilities, structures and roads … Such waste includes, but is not limited to bricks, concrete and other masonry materials, soil, rock, wood (including painted, treated and coated wood and wood products) … Also, waste contained in an illegal disposal site may be considered C&D debris if the department determines that such waste is similar in nature and content to C&D debris.

92.     6 NYCRR Subpart 360-7 regulates the disposal of C&D in C&D landfills.

93.     The Property is not and never was a C&D landfill.

94.     The disposal of the Regulated Fill dumped on, at and about the Property by the Dimes and Duffy Defendants violated 6 NYCRR 360-1.1(b).

95.     The illegal disposal of C&D on the Property by the Dimes and Duffy Defendants subjects the Property to regulation as an illegal landfill and any and all costs associated with securing full compliance with all applicable solid waste and site remediation requirements and standards.

96.     6 NYCRR 375-6.7(d) reads as follows:

Soil covers and backfill.

(1) *Soil brought to the site* for use as a soil cover or backfill *must*:

(i) be comprised of soil or *other unregulated material as set forth in Part 360* of this Title; [and]

(ii) not exceed the applicable soil cleanup objectives for the use of the site, as set forth in Table 375-6.8(a) or (b) of this Subpart, as follows:

(a) for unrestricted use sites, as set forth in Table 375-6.8(a) of this Subpart;

(b) for residential, restricted-residential, and commercial use sites use the lower of the protection of groundwater or the protection of public health soil cleanup objectives, for the identified use of the site as set forth in Table 375-6.8(b) of this Subpart.

* * *

16

(2) Analytical data is required to demonstrate that the material complies with the requirements of paragraph (1) of this subdivision. The number of samples required to confirm compliance will be approved in the work plan. The department may issue a site specific exemption for the analytical testing requirements, based upon documentation of the origin and composition of the material.

(emphasis added).

97.     6 NYCRR 566.5(a) states: "Pollution of the land and/or surface or ground fresh water resulting from producing, refining, transportation or processing of oil, gas and products, or in connection with solution mining, is prohibited."

98.     6 NYCRR 566.5(b) states:

Brine or salt water liquids shall not be stored or disposed of except as follows, unless an alternative procedure has been approved by the department after written application therefor and demonstration of good cause, said permission to be granted on an administrative basis or after public hearing at the discretion of the department:

(1) Brine or salt water may be stored prior to disposition in any watertight tank or container including an earthen pit which is underlaid by tight soil such as heavy clay or hardpan. Where the soil underlying the pit is porous and/or is closely underlaid by a gravel or sand stratum, impounding of brine or salt water in such earthen pit is prohibited unless the pit is lined with watertight material. The earthen pit shall be constructed and maintained so as to prevent escape of brine or salt water therefrom, including maintenance of the level of the impounded fluids, including those added by natural precipitation so that no fluids shall be allowed to escape over or into adjacent lands or into streams or other bodies of water.

99.     The disposal of the Regulated Fill (to include any applicable C&D) and the continuing and on-going discharge of wastewaters on, at and about the Property by the Dimes Defendants constitutes a violation of 6 NYCRR 566-5(a) and (b).

100.    6 NYCRR 556-4(b) states:

The operation of any well, lease or unit shall be such as to keep and maintain all well locations and lease or unit installations free of rubbish, debris, dead grass, brush, weeds and other inflammable material. All waste oil shall be disposed of in a manner which will not create a fire hazard.

101.    The disposal of the Regulated Fill (to include any applicable C&D) on, at and about the Property by the Dimes Defendants constitutes a violation of 6 NYCRR 556-4(b).

## AS AND FOR A FIRST CAUSE OF ACTION
### (RCRA Citizen Suit)

102.    Plaintiff repeats and realleges paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.    This is a citizen suit action brought pursuant to section 7002 of the Resource Conservation and Recovery Act, 42 U.S.C.A. § 6972.

104.    Plaintiff seeks Declaratory and Injunctive Relief and civil penalties under Section 7002 of the Resource Conservation and Recovery Act ("RCRA" or "the Act") as amended, 42 U.S.C.A. § 6972, for the Defendants' past and on-going handling, storage, treatment, transportation, or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

105.    In relevant part, 42 U.S.C. § 6972(a) states as follows:

(a) In general[.] Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

* * *

(1)(B) against any person [...] who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

[and]

(2) … The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to … restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph

18

(1)(B), to order such person to take such other action as may be necessary

106. The Plaintiffs and the Trust are a "person" as that term is defined in RCRA at 42 U.S.C. § 6903(15).

107. The Dimes and Duffy Defendants and Defendant Piette are each a "person" as that term is defined in RCRA at 42 U.S.C. § 6903(15).

108. The Regulated Fill is a "solid waste" as that term is defined in 42 U.S.C. § 6903(27).

109. The Regulated Fill is a "hazardous waste" as that term is defined in 42 U.S.C. § 6903(5).

110. The dumping of Regulated Fill on the Property constitutes "disposal" as that term is defined at 42 U.S.C. § 6903(3).

111. As evidenced in the photographs set forth in Paragraph 66 above, the Regulated Fill includes, but is not limited to, waste piping, waste containers, drilling waste and debris and blow-out waste from failed containment pits.

112. The Regulated Fill may present an imminent and substantial endangerment to health or the environment in that it constitutes illegally disposed of contaminated construction and demolition debris that contains and includes waste piping, waste containers, drilling waste and debris, blow out waste from failed containment pits, human wastes, and upon information and belief petroleum wastes.

113. The Dimes and Duffy Defendants are each a past or current operator of the Property at the time the Defendants disposed of the Regulated Fill on, at and about the Property thereafter have refused to remove the Regulated Fill from the Property and thus, the Dimes and Duffy Defendants and Defendant Piette have each contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal of the Regulated Fill.

114.     As persons alleged to have contributed to or who are contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment, the Dime and Duffy Defendants are each subject to suit pursuant to 42 U.S.C. § 6972(a)(1)(B).

115.     As persons who contributed to or who are contributing to the past or present handling, storage, treatment, transportation, or disposal of the solid and/or hazardous waste located on, at or about the Property of the Trust and which may present an imminent and substantial endangerment to health or the environment, the Dime and Duffy Defendants are each subject to an order of the court to take such other action as may be necessary to alleviate the conditions on, at or about the Property.

116.     The action required to be taken by the Dime and Duffy Defendants is the removal and proper off-site legal disposal of the Regulated fill and thereafter, the abatement of the Property to remove and or otherwise mitigate any hazard resulting from the removal of the Regulated Fill.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Action for cutting, removing, injuring or destroying trees or timber, and damaging lands thereon pursuant to NY RPAPL § 861)**

117.     Plaintiff repeats and realleges paragraphs 1 through 116 of this Complaint as if fully set forth herein.

118.     Without the consent of the Trustees and the Trust, the Dimes and Duffy Defendants and Defendant Piette did cut, remove, injure or destroy, or caused to be cut, removed, injured or destroyed, underwood, trees and timber on the land of the Trust.

119.     Having cut, removed, injured or destroyed, or caused to be cut, removed, injured or destroyed, underwood, trees and timber on the land of the Trust without the consent of the Trustees or the Trust, the Dimes and Duffy Defendants and Defendant Piette are liable for treble the stumpage

value of the tree or timber or two hundred fifty dollars per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation.

120.     The Trust is entitled to recover from the Dime and Duffy Defendants and Defendant Piette treble the stumpage value of the tree or timber and two hundred fifty dollars per tree, and both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of the Defendants having cut, removed, injured or destroyed, or caused to be cut, removed, injured or destroyed, underwood, trees and timber on the land of the Trust without the consent of the Trustees or the Trust.

121.     Such reparations shall be of such kind, nature and extent as will reasonably restore the lands of the Trust affected by the Defendants' violation to the land's condition immediately before the violation and may be made by physical restoration of such lands and/or by the assessment of monetary payment to make such restoration.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Common Law)

122.     Plaintiff repeats and realleges paragraphs 1 through 121 of this Complaint as if fully set forth herein.

123.     Defendant Throop holds title to the Property's mineral rights.

124.     Defendant Thropp does not hold title to any of the Property's surface rights.

125.     Defendant Thropp does not hold title to the Property's timber rights.

126.     Defendant Thropp does not hold title to any timber on, at or about the Property.

127.     Defendant Thropp had no right to lease or assign any timber tights regarding the Property to the Dimes Defendants.

128.     A mineral estate in a tract of land carries with it the right to such access over the surface that may be reasonably necessary to carry on mining activities.

129.     Defendant Thropp's mineral rights in the Property afforded her no more than the right to such access over the surface of the Property that may be reasonably necessary to carry on mining activities.

130.     The Thropp Lease afforded the Dimes Defendants the right to access, use and exploit Defendant Thropp's mineral rights but only that use and access as may be reasonably necessary to carry on mining activities.

131.     The following activities of Defendant Thropp are all in excess of what was reasonably necessary for the Dimes Defendants to carry on mining activities on the Site:

    A.  The execution of a mineral rights lease purporting to authorize Defendant Dimes Energy, LP the right to remove timber and trees form the Property; and

    B.  The execution of a mineral rights lease obligating the Dimes Defendants to compensate Defendant Thropp for the value of timber and trees removed from the Property.

132.     The following activities of the Dimes Defendants are all in excess of what was reasonably necessary for the Dimes Defendants to carry on mining activities on the Site:

    A.  Constructing roads as wide as 85 feet in width;

    B.  The removal of timber and trees from the Property;

    C.  Constructing roads, pipelines, and berms so as to preclude the Plaintiffs and the Trust and its agents and invitees, from accessing, using, and enjoying that portion of the Property enclosed within or above the constructed berms on, at, about and across the Property;

    D.  Constructing roads, pipelines, and berms so as to preclude the Plaintiffs and the Trust and its agents and invitees, right to access, enjoy and secure the value of timber and trees

located on the Property that are enclosed within or above the constructed berms and

encircled by and/or intermingled within the subject piping;

E.  Disposing of Regulated Wastes on the Property; and

F.  The continuing and ongoing failure to manage the Defendants' constructed environment

and the resulting on-going harm and destruction of the Property's environment.

133.    The Dimes Defendants and Defendant Thropp are liable to the Trust for all damages the

Trust has suffered as a result of the Defendants' activities that were and are not reasonably necessary for

the carrying out of mining activities on the Property.

**WHEREFORE** Plaintiffs demand Judgment against the Defendants as follows:

1.    With regard to the first cause of action, pursuant to 42 U.S.C § 6972(a)(1)(B), the

following relief:

A.  A Declaration that the past and on-going handling, storage, management, treatment and

disposal of the solid waste and hazardous waste contained on, at and about the Property

by the Dimes and Duffy Defendants may present an imminent and substantial

endangerment to health or the environment;

B.  An Order requiring the Dimes and Duffy Defendants to take any and all such action as

may be necessary to terminate the imminent and substantial endangerment to health or

the environment; and

C.   An Award to Plaintiffs and the Trust the costs of litigation, including, but not limited to,

attorneys' fees and expert witness fees, pursuant to section 7002(e) of RCRA, 42

U.S.C.A. § 6972(e);

2.    With regard to the second cause of action, pursuant to NY RPAPL § 861, the following

relief:

A. An Order directing the Dimes and Duffy Defendants to reimburse the Plaintiff treble the stumpage value of the trees and timber and two hundred fifty dollars per tree cut, removed, injured or destroyed by the Dimes and Duffy Defendants without the consent of the Trustees and the Trust, and the interest thereon pursuant to the requirements of New York law;

B. An Order directing the Dimes and Duffy Defendants to pay the Plaintiff the stumpage value of the trees and timber plus two hundred fifty dollars per tree cut, removed, injured or destroyed by the Dimes and Duffy Defendants, if any, with the consent of the Trustees and the Trust, and the interest thereon pursuant to the requirements of New York law; and

C. An Order directing the Dimes and Duffy Defendants to make such reparations of such kind, nature and extent as will reasonably restore the lands of the Trust affected by the Defendants' violation to the land's condition immediately before the violation and/or an assessment and judgment obligating the Defendants to make a monetary payment to Trust to allow it to make such restoration.

3.      With regard to the third cause of action, pursuant to the common law, the following relief:

A. An order directing the Dimes Defendants and Defendant Thropp to compensate the Plaintiffs and the Trust for the value of all timber and trees that are no longer accessible to the Trust;

B. An order directing the Dimes Defendants to compensate the Trust for the lost right of use and enjoyment of the Property as a result of all Dimes Defendants' action and inactions in excess of what was reasonably necessary for the Dimes Defendants to carry on mining activities on the Property;

C. An Order directing the Dimes Defendants to remove the berms constructed adjacent to the roadways and oil and gas wells constructed by the Dimes Defendants;

D. An Order directing the Dimes Defendants to remove Regulated Waste disposed of on, at or about the Property by the Dimes Defendants; and

4.    With regard to all causes of action granting such other, further and additional relief as may be just and proper.

Dated:  September 28, 2021                              Respectfully submitted,

                                                       The Wladis Law Firm, P.C.

                                                       By:  /s/Kevin C. Murphy, Esq.
                                                       Kevin C. Murphy, Esq, Bar Roll #508134
                                                       Timothy J. Lambrecht, Bar Roll #510390
                                                       Attorneys for the Plaintiff
                                                       6312 Fly Road
                                                       PO Box 245
                                                       Syracuse, NY 13214
                                                       Telephone:  315-445-1700
                                                       E-mail:  kmurphy@wladislawfirm.com